ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| SARTORIUS STEDIM BIOTECH, INC., Recurrida, v. SINDICATO PUERTORRIQUEÑO DE TRABAJADORES, Peticionaria. | TA2025CE00903 | *CERTIORARI* procedente de Tribunal de Primera Instancia, Sala Superior de San Juan. Civil núm.: SJ2024CV10022. Sobre: impugnación de laudo. |
|---|---|---|

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Romero García, jueza ponente.

### RESOLUCIÓN

En San Juan, Puerto Rico, a 16 de enero de 2026.

La parte peticionaria, Sindicato Puertorriqueño de Trabajadores y Trabajadoras (Sindicato), presentó este recurso con el fin de que expidamos el auto y revoquemos la *Sentencia* dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 17 de octubre de 2025. Mediante el referido dictamen, el Tribunal de Primera Instancia declaró con lugar la solicitud de revisión de laudo presentada por la parte recurrida, Satorius Stedim Biotech, Inc. (Satorius), y anuló el laudo emitido por el árbitro del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos de Puerto Rico (Negociado); ello, a raíz de que concluyó que el laudo no se conformaba al derecho aplicable.

Por los fundamentos que expondremos a continuación, **denegamos** la expedición del auto de *certiorari*.

I

El 24 de marzo de 2023, Sartorius[1] despidió a su entonces empleado unionado, el señor Francisco Camacho Quiñones (señor Camacho), quien

---

[1]Sartorius Stedim Biotech, Inc., es una corporación que manufactura productos biotecnológicos o biofarmacéuticos en Yauco, Puerto Rico. **Estos productos están destinados al consumo humano, ya que son utilizados en filtros y cápsulas para medicamentos o sueros**. *Véase*, entrada 1, del *Sistema Unificado de Manejo y Administración de Casos* del Tribunal de Primera Instancia (SUMAC TPI).

se desempeñaba como Operador III[2] en el área de producción de la compañía recurrida[3]. Dado que las relaciones entre las mencionadas partes se regían por las disposiciones de un Convenio Colectivo con vigencia del 1 de enero de 2023, hasta el 31 de diciembre de 2028, acordaron someter ante el árbitro del Negociado la controversia respecto a si el despido del señor Camacho había estado justificado o no[4]. En específico, se sometió a su consideración si la severa sanción del despido procedía de conformidad con los Artículos 5.1y 19.7 del Convenio[5].

El 17 de abril de 2024, se celebró la vista evidenciaria en la sede del Negociado en Hato Rey.

Luego de evaluar la prueba desfilada, el árbitro, José F. Pueyo Font, concluyó en su laudo del 30 de septiembre de 2024 que, si bien el señor Camacho había incurrido en las faltas imputadas, el despido resultaba en

---

[2] El señor Camacho es un empleado unionado, Operador III en el área de producción, específicamente de "*lid adapting*" y "*rotary*" de un **"*clean room*"; es decir, un cuarto o área de trabajo higienizado o estéril**. Esta área de trabajo exige que los empleados vistan mamelucos completamente cerrados, lleven mascarillas, utilicen botines especiales y eviten contacto con gérmenes, tales como los que se encuentran en los celulares personales de los empleados, entre otras medidas higiénicas.

Las violaciones que provocaron su despido ocurrieron el **16 de marzo de 2023**, cuando su supervisor lo encontró en el "*clean room*" con celular en mano y el mameluco abierto. Fue reprendido por ello. De hecho, ese mismo día, se le citó, junto al representante de la Unión, a la división de personal. En la reunión, el señor Camacho admitió la violación.

Días después, el **23 de marzo de 2023**, otra supervisora lo encontró en la misma situación (mameluco abierto y celular en mano), mientras Camacho se encontraba en el área del "final pack". Se le llamó la atención por esa violación. El **24 de marzo de 2023**, fue despedido.

[3] *Véase*, entrada 1, *exhibit* 5, SUMAC TPI. Según surge de la carta de despido, el empleo del señor Camacho fue terminado luego de este cometer las faltas núm. 34 y 40 del *Manual del Empleado*, e incumplir con las secciones 19.7 y 5.1 del Convenio Colectivo.

[4] *Véase*, entrada 1, *exhibit* 1, SUMAC TPI.

[5] En lo pertinente, el Art. 5.1 del Convenio, al abordar los derechos de la gerencia, dispone los siguiente:

> Se reconoce que el Patrono tiene el derecho de administrar y operar su negocio y dirigir a la fuerza trabajadora, incluyendo, pero no limitado al derecho de planificar, dirigir y controlar operaciones; contratar, suspender o despedir por justa causa[.]
>
> .      .      .      .      .      .      .      .      .

Asimismo, en cuanto al uso de celulares, el Art. 19. 7 del Convenio establece que:

> **El uso de celulares durante horas laborables en los predios de la Compañía está estrictamente prohibido en las siguientes áreas: áreas de producción, baños, y almacenes**. En los almacenes, se podrá utilizar el celular únicamente cuando esté autorizado por la compañía.
>
> .      .      .      .      .      .      .      .      .

*Véase*, entrada 1, *exhibit* 1, SUMAC TPI. (Énfasis nuestro).

una penalidad excesiva[6]. Sostuvo que Sartorius no había seguido los pasos de disciplina progresiva aplicables según su *Manual del Empleado*[7]. Por tanto, ordenó la reposición del señor Camacho en su empleo sin paga retroactiva.

Inconforme con la referida determinación, el 28 de octubre de 2024, Sartorius solicitó ante el Tribunal de Primera Instancia la revisión del laudo[8]. En síntesis, alegó que la determinación del árbitro resultaba contraria a derecho, obviaba artículos pertinentes del Convenio Colectivo (Arts. 5.1 y 19.7) y resultaba contraria al acuerdo de sumisión estipulado por las partes en la vista de arbitraje celebrada el 17 de abril de 2024. Resaltó que, contrario a lo resuelto por el árbitro, sí cumplió con los pasos de disciplina progresiva y ello quedó evidenciado mediante la notificación de acción disciplinaria previa del 15 de noviembre de 2021[9].

El 17 de noviembre de 2024, el Sindicato, en representación del señor Camacho, presentó su alegación responsiva[10]. Sostuvo que de la solicitud de revisión presentada por Sartorius no surgía fundamento de derecho alguno que ameritara que se dejara sin efecto el laudo. Insistió en que Sartorius no evidenció justificación alguna para imponer la sanción más severa del despido.

Sometido el asunto, el 17 de octubre de 2025, el Tribunal de Primera Instancia emitió la sentencia mediante la cual declaró con lugar la impugnación y anuló el laudo. El foro *a quo* concluyó que el árbitro del Negociado cometió un craso error de derecho al interpretar

---

[6] Entrada 1, *Laudo de Arbitraje* del 30 de septiembre de 2024, SUMAC TPI.

[7] En cuanto a las faltas núm. 34 y 40, el *Manual del Empleado* establece que una primera ofensa conllevaría una amonestación verbal; una segunda ofensa, amonestación escrita; una tercera ofensa; suspensión de días laborables; y la cuarta, podría acarrear el despido. *Íd.*, entrada 1, SUMAC TPI.

[8] Entrada 1, SUMAC TPI.

[9] De la referida notificación surge que Sartorius suspendió al señor Camacho por tres días laborables tras que este cometiera las faltas núm. 8, núm. 10 y núm. 43 del Manual de Empleados. En esa ocasión, se le apercibió de que, "en una próxima situación similar **en el que viole alguna política de la compañía**, conllevaría acciones disciplinarias más severas". (Énfasis nuestro). Entrada 1, *exhibit* 6, SUMAC TPI.

[10] Entrada 7, SUMAC TPI.

incorrectamente el Art. 2(c) de la *Ley sobre despidos injustificados*, Ley Núm. 80 del 30 de mayo de 1976, según emendada, 29 LPRA sec. 185b[11].

Inconforme con la determinación, el 4 de noviembre de 2025, el Sindicato presentó una solicitud de reconsideración[12].

El 12 de noviembre de 2025, el foro primario declaró sin lugar la solicitud de reconsideración presentada por el Sindicato[13].

Aún inconforme, el 15 de diciembre de 2025, el Sindicato presentó este recurso de *certiorari* y formuló los siguientes señalamientos de error:

> Erró el TPI al exceder el estándar de revisión judicial sumamente limitada al hacer determinaciones de hechos adicionales a las hechas por el árbitro y al re-ponderar la prueba, basando su anulación en las alegaciones de la parte promovente sin la debida deferencia probatoria.
>
> Erró el TPI al concluir que el árbitro cometió un craso error de derecho al interpretar y aplicar el principio de la Disciplina Progresiva del Patrono, fallando en reconocer la potestad intrínseca del árbitro para determinar la razonabilidad y la justa causa de la penalidad.
>
> Erró el TPI al basar su anulación en una interpretación legal inflexible del Artículo 2(c) de la Ley Núm. 80 ("Violación reiterada..."), al imponer su criterio de que una suspensión previa automáticamente justificaba el despido, en contravención con la facultad del árbitro para ponderar ese factor con la ausencia de pasos disciplinarios progresivos para las faltas más recientes.

(Énfasis omitido).

Por su parte, el 24 de diciembre de 2025, Sartorius presentó su oposición a la expedición del *certiorari*.

Evaluados los argumentos de las partes litigantes a la luz del derecho aplicable, denegamos la expedición de este recurso.

II

Distinto al recurso de apelación, el tribunal al que se recurre mediante *certiorari* tiene discreción para atender el asunto planteado, ya sea expidiendo el auto o denegándolo. *Rivera Figueroa v. Joe's European*

---

[11] El referido articulo dispone que, se entenderá por justa causa para el despido de un empleado, entre otras cosas, la violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento, siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

[12] Entrada 11, SUMAC TPI.

[13] Entrada 13, SUMAC TPI.

*Shop*, 183 DPR 580, 596 (2011); *García v. Padró*, 165 DPR 324, 334 (2005). Así pues, el *certiorari* es un recurso extraordinario cuya característica se asienta en "la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012).

Ahora bien, la discreción para entender en el recurso de *certiorari* no se ejerce en el vacío. La Regla 40 del Reglamento de este Tribunal, según emendado, establece los criterios que debemos considerar al momento de ejercer nuestra facultad discrecional; a decir:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

*In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, a la pág. 63, 216 DPR __ (2025).

Cual reiterado, este Tribunal no habrá de intervenir con el ejercicio de la discreción del Tribunal de Primera Instancia, salvo en "un craso abuso de discreción, o que el tribunal [haya actuado] con prejuicio y parcialidad, o que se [haya equivocado] en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial." *Lluch v. España Service,* 117 DPR 729, 745 (1986). Lo anterior le impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro primario. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

III

Examinada la petición de *certiorari*, la oposición a su expedición, así como el trámite procesal de este caso, a la luz del derecho aplicable, este Tribunal concluye que el Sindicato no logró establecer que el foro primario hubiera incurrido en error alguno que justifique nuestra intervención. Afirmamos que, en cuanto a este último asunto, no concurren los criterios establecidos en la Regla 40 del Reglamento de este Tribunal para expedir el auto de *certiorari*.

IV

A la luz de todo lo antes expuesto, este Tribunal **deniega** la expedición del recurso de *certiorari*

Notifíquese.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones